IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| ALFONSO TREVINO III,<br>TDCJ-CID No. 2199765,<br><br>Plaintiff,<br><br>v.<br><br>MARCELO CONTRERAS,<br><br>Defendant. | § § § § § § § § § § § § | 2:25-CV-46-Z-BR |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant's Motion for Summary Judgment (the "Motion") filed by Defendant Marcelo Contreras. (ECF 28). For the reasons stated below, the Magistrate Judge recommends that the Motion be GRANTED.

## I. FACTUAL BACKGROUND

**A.    Factual Background.**[1]

On August 27, 2024, two officers, identified in Trevino's questionnaire responses as TDCJ officers Braden Babcock ("Babcock") and Marcello Contreras ("Contreras") were escorting Trevino to get a haircut when Babcock departed in response to a radio call for additional staff, leaving Contreras to escort Trevino alone. (ECF 3 at 6). Trevino was handcuffed with his hands behind his back. Conteras put Trevino in the barber chair, still handcuffed. (*Id*.) Another inmate, Cody Parlato ("Parlato"), entered the area and attacked Trevino, stabbing him repeatedly with a sharpened steel rod, puncturing both lungs and damaging several other internal organs. (*Id*.).

---

[1]These background facts are taken from Trevino's Complaint (ECF 3) and questionnaire responses (ECF 11) and are assumed to be true for the purpose of evaluating the merits of Defendant's motion.

Trevino contends that Conteras abandoned him, left him defenseless to the attack and failed to call for help. (*Id*.; ECF 11 at 2).

Trevino filed this civil rights lawsuit on February 25, 2025, seeking compensatory damages. (*Id*.). Trevino's Complaint against Babcock and the TDCJ, as well as his claims against Contreras in his official capacity, were dismissed at screening. (ECF 12, 13). Contreras now seeks summary judgment on the claims against him in his individual capacity, based on his defense of qualified immunity. Trevino did not respond to the Motion.

## II. SUMMARY JUDGMENT STANDARD

**A.    Summary Judgment is Proper if No Genuine Dispute as to Any Material Fact.**

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must resolve all reasonable doubts in favor of the party opposing the motion. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co*., 655 F.2d 598, 602 (5th Cir. 1981).

The movant has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Anderson,* 477 U.S. at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure all of the essential elements of the claim or defense." *Fontenot v. Upjohn Co*., 780 F.2d 1190, 1194 (5th Cir. 1986). The nonmovant

then must provide affirmative evidence to defeat summary judgment. *Anderson*, 477 U.S. at 257. No "mere denial of material facts nor...unsworn allegations [nor] arguments and assertions in briefs or legal memoranda" will suffice to carry this burden. *Moayedi v. Compaq Comput. Corp.*, 98 F. App'x 335, 338 (5th Cir. 2004). The Court requires "significant probative evidence" from the nonmovant in order to dismiss a request for summary judgment supported appropriately by the movant. *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001). The Court must consider all evidence but must not make any credibility determinations or weigh the evidence. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

Because he proceeds *pro se*, Trevino's pleadings are held to a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed") (quotation omitted). Nevertheless, *pro se* parties must "still comply with the rules of procedure and make arguments capable of withstanding summary judgment." *Ogbodiegwu v. Wackenhut Corr. Corp.*, 202 F.3d 265, 1999 WL 1131884, at *2 (5th Cir. Nov. 10, 1999); *Yazdchi v. Am. Honda Fin. Corp.*, 217 F. App'x 299, 304 (5th Cir. 2007) ("The right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law.") (citing *Hulsey v. Texas*, 929 F.2d 168, 171 (5th Cir. 1991)).

**B.      Defendant's Qualified Immunity Defense Alters the Burden of Proof.**

Contreras moves for summary judgment on his affirmative defense of qualified immunity. "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Argueta v. Jaradi*, 86 F.4th 1084, 1088 (5th Cir. 2023) (citing *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc)). Once an officer pleads qualified immunity, the plaintiff has the burden to establish that the

officer violated the plaintiff's clearly established federal rights. *Argueta*, 86 F.4th at 1088 (citing *Estate of Davis v. City of North Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005)). "This is a demanding standard." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1517 (2016). Because qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law, … we do not deny its protection unless existing precedent places the constitutional question beyond debate." *Argueta*, 86 F.4th at 1088 (internal citation and quotation omitted).

A qualified immunity defense alters the usual summary judgment burden of proof. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id*. To trigger the qualified-immunity framework, however, the government official must "satisfy his burden of establishing that the challenged conduct was within the scope of his discretionary authority." *Sweetin v. City of Texas City*, 48 F.4th 387, 392 (5th Cir. 2022) (quoting *Cherry Knoll, L.L. C. v. Jones*, 922 F.3d 309, 318 (5th Cir. 2019)). For example, in *Sweetin,* the Fifth Circuit held this "oft-overlooked threshold requirement" was dispositive "because state law does not give a permit officer the authority to conduct stops of any kind." *Sweetin,* 48 F.4th at 392. In this case, however, Trevino does not dispute that Contreras was acting within the scope of his duties.

To determine if an official acting within the scope of his or her duties is entitled to qualified immunity, courts conduct a two-step analysis. First, they examine whether the plaintiff has shown a violation of a constitutional right under current law. *Bevill v. Fletcher*, 26 F.4th 270, 275 (5th Cir. 2022) (quoting *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019)). Second, if a violation has occurred, courts determine whether the right in question was "clearly established" at the time

4

of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct. *Id.* In short, an officer is entitled to qualified immunity "if there is no violation, or if the conduct did not violate law clearly established at the time." *Bailey v. Iles*, No. 22-30509, 2023 WL 8062239 at *2 (5th Cir. Nov. 21, 2023). Courts have the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The qualified immunity defense is appropriately resolved at the summary judgment stage when (1) a plaintiff has established that the defendant has engaged in the complained-of conduct or (2) the court "skip[s], for the moment, over ... still-contested matters to consider an issue that would moot their effect if proved." *Haverda v. Hays County*, 723 F.3d 586, 599 (5th Cir. 2013). "'If resolution of [qualified immunity] in the summary judgment proceedings turns on what the defendant actually did, rather than on whether the defendant is immunized from liability ..., and if there are conflicting versions of his conduct, one of which would establish and the other defeat liability, then the case is inappropriate for summary judgment.'" *Id.* (quoting *Barker v. Norman*, 651 F.2d 1107, 1123-24 (5th Cir. Unit A July 1981)).

Accordingly, the qualified immunity inquiry at this stage requires that the Court "accept the plaintiff's version of the facts (to the extent reflected by proper summary judgment evidence) as true." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004); *see Tolan v. Cotton*, 572 U.S. 650, 651 (2018) ("[I]n ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" (quoting *Anderson,* 477 U.S. at 255). And, particularly applicable in *pro se* cases, "verified complaint[s] and other verified pleadings serve as competent summary judgment evidence." *Falon v. Holly*, 480

F. App'x 325, 326 (5th Cir. 2012) (per curiam) (citing *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003)).

"Although summary judgment may be appropriate based on a plaintiff's inability to prove the facts essential to recovery, this has 'nothing to do with the qualified immunity defense,'" *Haverda*, 723 F.3d at 599 (quoting *Barker*, 651 F.2d at 1124), as "immunity ... [is] an entitlement distinct from the merits of the case," *Good v. Curtis*, 601 F.3d 393, 397 (5th Cir. 2010) (citation and quotation marks omitted).

**C.      Trevino's Failure to Respond is Not Dispositive.**

When a nonmoving party does not file a response to a motion for summary judgment, the failure to respond "does not permit the court to enter a 'default' summary judgment." *Boyd v. Fam. Dollar Stores of Texas, LLC*, No. 3:22-cv-1368-D, 2023 WL 4141052, at *1 (N.D. Tex. June 22, 2023).  As the United States Court of Appeals for the Fifth Circuit has explained:

> [a] motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule. *John v. La. (Bd. of Trustees) for State Colleges & Universities*, 757 F.2d 698, 709 (5th Cir. 1985). The movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed. *Id*. at 708. Therefore, if the district judge's decision was to grant summary judgment solely because of a default, such decision constituted reversible error.

*Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985); *see also Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 & n.3 (5th Cir. 1995) (*citing Hibernia*). Moreover, FED. R. CIV. P. 56(e) provides that:

> [i]f a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion [and] (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]

Therefore, Contreras still must provide sufficient evidence upon which the Court may base a

summary judgment. Failure to do so requires the Court to deny the Motion, even if it is unopposed.

### III. LEGAL ANALYSIS

Trevino alleges that Contreras failed to protect him from Parlato's attack in violation of the Eighth Amendment. Prison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates. *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994); *see also Horton v. Cockrell*, 70 F.3d 397, 400–02 (5th Cir.1995). Pursuant to *Farmer*, an inmate "must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that prison officials were deliberately indifferent to the inmate's safety. *Id*. at 834.

Not every injury suffered by a prisoner at the hands of another, however, rises to the level of a constitutional violation. *Id.* at 834. Nor are prison officials "expected to prevent all inmate-on-inmate violence." *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003) (citing *Farmer*, 511 U.S. at 834). Only deliberate indifference, "an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). "Deliberate indifference" means that a prison official is liable "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847-48. Officials who fail to prevent an injury inflicted by fellow prisoners are liable only when they possess the requisite mental state. *Id.* at 832-34.

### A.    Trevino Shows No Constitutional Violation by Contreras.

Even accepting Trevino's version of events as true, he fails to provide any factual basis suggesting that Contreras had (1) actual knowledge of any risk of serious harm before the attack by Parlato; or (2) a reasonable opportunity to prevent the attack. Taking Trevino's description of the attack as true for the purposes of this Motion, the attack apparently occurred without warning.

There apparently was little to no time for Contreras to realize that an attack was imminent in sufficient time to allow Contreras to prevent it. Additionally, in the Safe Prison investigation report from after the event, Trevino admitted that, although he had "had words" with Parlato in the past, he "didn't think there was any issues" between Parlato and himself prior to the attack. (ECF 30 at 10). In fact, Trevino and Parlato had exchanged coffee and tea the day prior to the attack. (*Id*.). Trevino was unaware of any animosity or substantial risk of harm, and fails to allege facts indicating that Contreras was aware of any risk before the attack.

Contreras was not required by law to put himself in danger by stepping in front of a charging inmate wielding a weapon. *Longoria v. Texas*, 473 F.3d 586, 593-94 (5th Cir. 2006). In failure-to-protect cases, "prison guards have no constitutional duty to intervene in the armed assault of one inmate upon another when intervention would place the guards in danger of physical harm." *Longoria,* 473 F.3d at 593-94; *Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir. 1995); *see also Winfield v. Bass*, 106 F.3d 525, 532 (4th Cir. 1997) (en banc) ("[S]uch heroic measures are not constitutionally required."). The Constitution does not require unarmed officials to endanger their own safety in order to protect a prisoner threatened with physical violence. *Longoria*, 473 F.3d at 593-94. "[C]ompletely failing to take any action" to stop an ongoing assault on a prisoner can amount to deliberate indifference. *Winfield*, 106 F.3d at 532. Courts have found that "a corrections officer's failure to intervene in a beating can be the basis of [§ 1983] liability" if the officer had a reasonable opportunity to act and "simply refused to do so." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). However, Trevino has provided no evidence that Contreras either had a "reasonable opportunity" to prevent Parlato's attack, or that he "completely failed" or "simply refused" to take action.

Even if Trevino is correct and Contreras did nothing, Trevino still cannot defeat

Contreras's affirmative defense. Because the Motion is based upon qualified immunity, the burden shifts to Trevino to provide some evidence of deliberate indifference by Contreras; that is, evidence that Contreras knew that Trevino faced a substantial risk of serious harm, and that Contreras disregarded that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 847. This Trevino fails to do. He provides no evidence that Contreras knew that Parlato intended to attack Trevino, or that Parlato had a weapon. Nor does Trevino provide evidence that Contreras deliberately disregarded any such danger as he escorted him. Trevino has failed to provide evidence indicating deliberate indifference by Contreras; as a result, he has failed to allege a constitutional violation against Contreras and Contreras thus is entitled to qualified immunity. *See Randolph v. Prator*, No. 03-0433, 2005 WL 1630167, at *2 (W.D. La. June 16, 2005) (recommending dismissal of plaintiff's failure to protect claim because defendant responded immediately and appropriately once the altercation began and had no knowledge of difficulties between plaintiff and his cellmate before the incident).

Once the attack began, Contreras retreated off the section, along with the inmate barber, and secured the section door. Another officer who was nearby and saw the assault requested backup. (ECF 30 at 10). Contreras took prompt action to contain the disturbance and to prevent the situation from escalating beyond the area. Because Trevino has provided no evidence that Contreras had actual knowledge of a substantial risk to Trevino's health or safety prior to the attack, or that Contreras had a reasonable opportunity to act to prevent the attack, Trevino fails to present any genuine issue of material fact as to whether Contreras was deliberately indifferent in violation of Trevino's Eighth Amendment rights.

**F.      Clearly Established Law.**

To defeat the second prong of the qualified immunity analysis, Trevino must provide clearly established law that Contreras's conduct was not objectively reasonable. "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation omitted). There are two ways for a plaintiff to demonstrate that a defendant's conduct violated clearly established law. *Batyukova v. Doege,* 994 F.3d 717, 726 (5th Cir. 2021). Under the first, more typical approach, the plaintiff must "identify a case" or "body of relevant case law" in which "an officer acting under similar circumstances ... was held to have violated the [Constitution]." *Id*. While there need not be a case directly on point, the unlawfulness of the challenged conduct must be beyond debate. *Id.* Under the second approach, there can be the rare "obvious case," where the unlawfulness of the officer's conduct is so egregious that it is sufficiently clear although existing precedent does not address similar factual circumstances. *Id.* at 726 (citing *Dist. of Columbia v. Wesby*, 538 U.S. 48, 65 (2018)); *see also Brosseau v. Haugen*, 543 U.S. 194, 199 (2004).

"In determining what constitutes clearly established law, [the Fifth Circuit] looks to Supreme Court precedent and then to [its] own." *Hicks v. LeBlanc*, 81 F.4th 497, 503 (5th Cir. 2023), (quoting *Shumpert v. City of Tupelo*, 905 F.3d 310, 320 (5th Cir. 2018)). When there is no direct controlling authority, "[the Fifth Circuit] may rely on decisions from other circuits to the extent that they constitute a robust consensus of cases of persuasive authority." *Id.* "It is the plaintiff's burden to find a case in his favor that does not define the law at a high level of generality." *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019). Trevino has failed to meet this burden. This is an additional basis upon which the Motion should be granted.

## RECOMMENDATION

For the reasons stated above, the Magistrate Judge recommends that Defendant's Motion for Summary Judgment be GRANTED.

## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED March 23, 2026.

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## \* <u>NOTICE OF RIGHT TO OBJECT</u> \*

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988).

11